## Robinson v. Peyton.

## ROBINSON v. PEYTON.

The statute of limitations or prescription of the country where suit is brought is a good defense to a suit to enforce a foreign judgment.

The law of a State may prescribe one period of limitation to suits upon the judgments of her own courts and a different period of limitation to suits upon the judgments of the courts of other States.

So much of the 4th section of the act of the Congress of Texas of June, 1845, as prescribed a limitation of one year to bring suit on a judgment of a foreign State is not repugnant to the Constitution or act of Congress of the United States, and interposes a bar to any suit not brought within that time on such judgments, whether the defendant was a citizen of Texas at the time of the rendition of the judgment against him or not. (Note 55.)

Appeal from Victoria. This suit was commenced in the District Court of Victoria county on the 26th day of May, 1848, on a judgment of the Circuit Court of Copiah county, in the State of Mississippi, rendered on the 15th day of May, 1845. The plaintiff afterwards amended his petition by an averment that the defendant was not a resident citizen of Texas at the date of the judgment against him, and that he emigrated to Texas sometime in November or December, 1845.

The defendant demurred to the plaintiff's petition and [**277**] pleaded the

statute of limitations. The court overruled the demurrer, and the parties went to trial on the other plea, and the jury returned a verdict for the plaintiff, on which judgment was rendered in his favor, and the defendant appealed. On the trial the defendant's counsel asked the court to charge the jury "that the law of 1845, which limits the time within which suits must be instituted on foreign judgments or the judgments of State Courts existing anterior to that time to two, six, and twelve months, is not a law impairing the obligation of contracts." The judge refused to give the charge, and the defendant excepted to such refusal.

*Cunningham*, for appellant.

I. By the act of 1841 (vol. 5, p. 44) an action could not be brought upon a foreign judgment. (1 Tex. R., 364.) The plaintiff has not conformed to the provisions of the act of 1845, and cannot therefore claim to be suing by virtue of it. It is presumed that he relies upon the 4th article, 1st section, of the Constitution of the United States and upon the act of Congress of May, 1790. It is denied that these give him any remedy or right of action on such judgments. Again, the Constitution and laws of the United States do not operate on judgments rendered prior to annexation. There would be no reciprocity; for it will hardly be contended that the act of 1790 has any operation on judgments rendered in the courts of the Republic of Texas.

II. But suppose there is a remedy: it is governed by the *lex fori*. (8 Pet. R., 372; 1 Greenl. R., 70; 2 Rand. R., 303; 13 Pet. R., 312.) The suit was therefore barred by the statute of limitations. (Vol. 9, Extra Sess., p., 21, sec. 4.) This defect was reached by the demurrer. (Swenson *et al v.* Walker's Adm'r., 3 Tex. R., 93.)

III. Again, the petition does not set forth that the judgment sued on is the judgment of a court having jurisdiction. (3 Wend. R., 267; 1 Tex. R., 9.)

IV. The court should have given the charge asked for by the defendant. (Lambeth *v.* Turner, 1 Tex. R., 364, and authorities cited above.)

[278] *Phillips*, for appellee.

I. The defense relied on in this suit is the act of 28th June, 1845, limiting suits on foreign judgments. That act was intended to protect the citizens of Texas residing in Texas at the date of its approval.

II. The statute could not attach before the person of the defendant was within our jurisdiction. From that time the statute might run. In this case the full term of one year cannot be computed from the time the party came to Texas; for the term of the limitation cannot survive the statute, which expired by its own limitation in one year from its passage.

III. The act of 1845 was abrogated by the act of annexation. It will be admitted that the first, second, third, and fifth sections became null and void at that date; the fourth is dependent on them, and cannot stand alone.

LIPSCOMB, J. The refusal to give the charge prayed and the overruling the demurrer are the only points made by the appellant that it is thought material to be noticed, and these two may be considered together. If the act of the Congress of the Republic of Texas prescribing a limitation to bringing suits on foreign judgments, passed on the 25th June, 1845, is operative and valid as the law at this time on subjects that arose under it, there is no question but the court below erred both in overruling the defendant's demurrer and in refusing to give the charges asked by defendant's counsel.

The 4th section of the act referred to is in the following words: "That all foreign judgments, decrees, and adjudications upon which suit shall be brought in the courts of this Republic, should the same be of four years' standing and upwards, shall be forever barred and proscribed unless sued on in sixty days from and after the passage of this act; those under four and over two years, unless sued on in six months; and those under two years, unless sued on in

Robinson v. Peyton.

one year : provided the original cause of action shall [**279**] remain unimpaired and may be sued on, at the election of the creditor, subject to prescription."

This law is supposed by some to have been superseded and virtually repealed by the consummation of the annexation of the Republic to the American Union. It is not essential to the case before us to decide whether the whole act is valid or not. It is the fourth section, just cited, upon the validity of which we are required to decide. It has been contended that, as the courts of this State are bound by the Constitution of the United States as the supreme law of the land, and as it in express terms provides and *declares that full faith and credit and effect shall be given in each State to the judicial proceedings of every other*, to give effect to the Constitution, no act of limitation of a State could be valid that prescribed a shorter period for suits to be brought on a judgment of a sister State than was prescribed for the judgments of their own courts. Judge Story, after treating of the influence of statutes of limitations, and sustaining the doctrine that they are laws affecting the remedies, and in general confined in their influence to their own forums, in relation to contracts, wherever they may have been entered into, proceeds : "A question of a kindred character has been discussed of late years both in England and America, and that is whether the statute of limitations or prescription of the country where suit is brought is a good defense and bar to a suit brought there to enforce a foreign judgment. In both countries it has been held a good defense and bar. In America the case was stronger than it was presented in England; for it was a judgment rendered in one of the United States which was brought to be enforced in another State of the Union, and therefore fell within the clause of the Constitution which declares that full faith and credit and effect shall be given in each State to the judicial proceedings of every other. It was thought that this clause did not in the slightest degree vary the application of the general principle that in all matters of proceedings in [**280**] courts, the *lex fori* was to govern." He referred to the case of Don v. Lippman (5 Clark & Fin. R., 1) for the English decision, and to McElmoyle v. Cohen (13 Pet. R., 312) for American authority. (Story's Con. Laws, sec. 582.) If the question were an open one, I must acknowledge that I should have felt the difficulty of reconciling a statute of a State prescribing a different bar to a judgment of another State from their own judgments. But the case of McElmoyle v. Cohen brought the point directly before the Supreme Court of the United States. The question presented to the court was whether the statute of limitations of Georgia can be pleaded to an action in that State founded upon a judgment rendered in the State of South Carolina. The statute of limitation of Georgia is "that actions of debt on judgments obtained in courts other than the courts of this State must be brought within five years after the judgment." Mr. Justice Wayne, who delivered the unanimous opinion of the court, after discussing at some length the provision in the Constitution as to the effect of a judgment of one State in another State, proceeds : "Such being the faith, credit, and effect to be given to the judgment of one State in another by the Constitution and the act of Congress, the point under consideration will be determined by settling what is the nature of a plea of the statute of limitations. Is it a plea that settles the right of a party on a contract or judgment, or one that bars the remedy? Whatever diversity of opinion there may be among jurists upon this point, we think it well settled to be a plea to the remedy, and consequently that the *lex fori* must prevail." And he refers to a variety of adjudicated cases both in the courts of England and the United States. After discussing the origin of prescription, and showing that it had been fixed by every nation in virtue of the sovereignty by which it exercises its legislation for all persons and property within its jurisdiction, the judge proceeds: "This being the foundation of the right to pass statutes of prescription or limitation, may not our State, [**281**] under our system, exercise this right in virtue of their sovereignty? Or is it to be conceded to them in every other particular than that of barring the remedy upon judgment of other States by the lapse of time?" After showing that this right does exist, he proceeds : "And if this right do exist, may it not be

Robinson v. Peyton.

exercised by a State's restraining the remedy upon the *judgment of another State*, leaving those of its own courts unaffected by a statute of limitations, but subject to the common-law presumption of payment after the lapse of twenty years? In other words, may not the law of a State fix different times for barring the remedy in a suit upon the judgment of another State and for those of its own tribunals? We use this mode of argument to show the unreasonableness of a contrary doctrine." He concludes: "It is therefore our opinion that the statute of limitations of Georgia can be pleaded to an action in that State founded upon a judgment rendered in the State of South Carolina." If, then, a State already a member of the confederacy could constitutionally prescribe a limitation to a suit on a judgment of another State of the confederacy different from the prescription of a judgment of its own tribunals, *a fortiori* an act passed by the Republic of Texas before we became a member of the confederacy would be free from any such repugnancy if it embraced the same object. Ours is a much stronger case than the one presented to the Supreme Court of the United States. Our act of limitation was passed before annexation, at the time when the Constitution of the Union could claim no exercise or influence over our sovereignty, and we were, in the literal sense of the term, a foreign State. The judgments on which it was designed to act were rendered before our relations to the Government of the United States were changed; and it might well be supposed that the construction of the Constitution of the United States and the act of their Congress would not have embraced the action of the Republic of Texas in this instance, even if it had been construed differently from the decision in the case of McElmoyle *v*. Cohen. We are therefore led to the conclusion [282] that so much of the 4th section of the act of the Congress of Texas of June, 1845, as prescribed a limitation of one year to bring suit on a judgment of a foreign State is not repugnant to the Constitution and act of Congress of the United States, and that it is valid and operative on the judgment sued on, and interposes a bar to the plaintiff's right of action in this case.

I shall not discuss the exception presented by the amended petition of the plaintiff, believing it to be a question not now open in this court. It is believed that no distinction is acknowledged between resident citizens at the date of the passage of the act and those who might come within our jurisdiction afterwards.

In answer to the exception, I will only cite the opinion of Judge Story, as found in section 578 of his work on the Conflict of Laws. "But if the question were entirely new, it would be difficult, upon principles of international justice or policy, to establish a different rule. Every nation must have a right to settle for itself the times and modes and circumstances within and under which suits shall be litigated in its own courts. There can be no pretense to say that foreigners are entitled to crowd the tribunals of any nation with suits of their own which are stale and antiquated, to the exclusion of the common administration of justice between its own subjects. As little right can foreigners have to insist that the times and modes of proceedings in suits provided by the laws of their country shall supersede those of the nation in which they have chosen to litigate their controversies or in whose tribunals they are properly parties to any suit."

The court below erred in overruling the defendant's demurrer. (Coles *v*. Kelsey, 2 Tex. R., 541; Swenson *v*. The Adm'r of Walker, 3 Tex. R., 93.)

The court erred also in refusing to give the charge asked by the defendant's counsel. The judgment is therefore reversed and the cause remanded.

Judgment reversed.

NOTE 55.—Pryor *v*. Moore, 8 T., 250; Kirkman *v*. Hendrick, 8 T., 253.